JS-6

Michael R. Lozeau (SBN 142893)
Email: michael@lozeaudrury.com
Douglas Chermak (SBN 233382)
Email: doug@lozeaudrury.com
LOZEAU DRURY
1939 Harrison Street, Suite 150
Oakland, CA 94612
Phone: (510) 836-4200
Facsimile: (510) 836-4205

Sarah J. Spinuzzi (SBN 305658)
Email: sarah@coastkeeper.org
Davina Shoumer (SBN 358336)
Email: davina@coastkeeper.org
ORANGE COUNTY COASTKEEPER
3151 Airway Avenue, Suite F-110
Costa Mesa, CA 92626
Phone: (714) 850-1965

Attorneys for Plaintiff
ORANGE COUNTY COASTKEEPER

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORANGE COUNTY COASTKEEPER, a California non-profit association,<br><br>            Plaintiff,<br><br>      v.<br><br>CREST COATING, INC., a California corporation,<br><br>            Defendant. | Case No.: 8:24-CV-02619<br><br>**[PROPOSED]** CONSENT DECREE |

# CONSENT DECREE

**WHEREAS,** Orange County Coastkeeper ("Coastkeeper") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Costa Mesa, California;

**WHEREAS,** the mission of Orange County Coastkeeper is to protect swimmable, drinkable, fishable water and promote watershed resilience throughout Orange County;

**WHEREAS,** Crest Coating, Inc. ("Crest") owns and operates a facility at 1351/1361 S Allec Street, Anaheim, California 92805 (the "Facility");

**WHEREAS,** the Facility's industrial activities consist of coating metal parts and products. The Facility is categorized under Standard Industrial Classification ("SIC") Code 3479, covering coating, engraving, and allied services.

**WHEREAS,** storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS,** Crest's industrial operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS,** the General Permit requires all permittees, including Crest, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan ("SWPPP") and a storm water monitoring implementation plan ("MIP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional

pollutant control technology ("BCT") to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be included and timely updated, as appropriate, in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards ("WQS"), and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

**WHEREAS**, on October 3, 2024, Coastkeeper sent a notice of intent to file suit ("60-Day Notice") to Crest, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director of the Regional Water Quality Control Board, Santa Ana Region ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ at the Facility;

**WHEREAS**, on December 3, 2024, Orange County Coastkeeper filed a complaint against Crest in the Central District of California, Civil Case No. 8:24-CV-02619 (the "Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Crest's discharges of pollutants into storm drains and surface waters, including the Orange County Municipal Separate Sewer System (MS4), which discharges into the Anaheim-Barber City Channel, which flows into Huntington Harbour, which flows into Anaheim Bay, which discharges into the Pacific Ocean (collectively, the "Receiving Waters");

**WHEREAS**, Coastkeeper and Crest (together, the "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice and Complaint without further proceedings; and

1      **WHEREAS**, all actions taken by Crest pursuant to this Consent Decree shall
2   be made in compliance with all applicable federal, state and local laws, rules and
3   regulations.

4      **NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE**
5   **SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS**
6   **FOLLOWS:**

7      1.     The Court has jurisdiction over the subject matter of this action pursuant
8   to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

9      2.     Venue is appropriate in the Central District of California Court pursuant
10  to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at
11  which the alleged violations are taking place is located within this District.

12     3.     The Complaint states a claim upon which relief may be granted against
13  Crest pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

14     4.     Orange County Coastkeeper has standing to bring this action.

15     5.     The Court shall retain jurisdiction over this action for purposes of
16  interpreting, modifying, or enforcing the terms and conditions of this Consent Decree
17  and adjudicating all disputes among the Parties that may arise under the provisions of
18  this Consent Decree, for the Term (as defined below) of this Consent Decree
19  including for as long as necessary for the Court to resolve any motion to enforce this
20  Consent Decree, but only regarding issues raised within the Term.

21  **I.    OBJECTIVES**

22     6.     It is the express purpose of the Settling Parties through this Consent
23  Decree to further the objectives of the Clean Water Act, and to resolve all issues
24  alleged by Orange County Coastkeeper in its 60-Day Notice and Complaint. These
25  objectives include compliance with the provisions of this Consent Decree,
26  compliance with all terms and conditions of the General Permit, and compliance with
27  all applicable sections of the CWA.

28

[PROPOSED] CONSENT DECREE                                Case No.: 8:24-CV-02619

16157-00002/5432245.10

7.  In light of these objectives and as set forth fully below, Crest agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II.  AGENCY REVIEW AND CONSENT DECREE TERM

### A.  AGENCY REVIEW OF CONSENT DECREE

8.  <u>Agency Review</u>. Coastkeeper shall submit this Consent Decree to the United States Department of Justice and the EPA (together, the "Federal Agencies") for agency review consistent with <u>40 C.F.R. § 135.5</u>. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a response, whichever is earlier (the "Agency Review Period").

9.  <u>Court Notice</u>. Coastkeeper shall notify the Court of the receipt date by the Federal Agencies, as required by <u>40 C.F.R. § 135.5</u>, in order to coordinate the Court's calendar with the 45-day review period.

10.  <u>Entry of Consent Decree</u>. Promptly following the expiration of the Agency Review Period, Coastkeeper shall submit the Consent Decree to the Court for entry.

### B.  DEFINITIONS

11.  Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, the following definitions apply:

    a.  "BAT" means the Best Available Technology Economically Achievable.

    b.  "BCT" means the Best Conventional Treatment Technology.

c.    "BMPs" means Best Management Practices as defined in the General Permit.

d.    "Containment or Treatment BMPs" means BMPs described in Section X.H.2.b.ii and iii of the Permit which shall include storm water containment and discharge reduction BMPs, treatment control BMPs (such as active treatment utilizing polymer or electrostatically-assisted filtration or technology equivalent in performance), or any combination of the foregoing consistent with Section X.H.6 of the Permit.

e.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

f.    "Day" or "day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

g.    "Discharge Point" means each industrial discharge location designated for sampling pursuant to the General Permit in the then-current SWPPP for the Facility.

h.    "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

i.    "Entry Date" means the day this Consent Decree is approved and entered by the Court.

j.    "Forecasted Rain Event" means a forecasted rain event with a fifty percent (50%) or greater probability of precipitation above 0.1 inches as predicted twenty-four (24) hours prior to the rain event

1  as determined by the National Oceanic and Atmospheric

2  Administration (http://forecast.weather.gov/) for Anaheim, CA.

3  k.  "Rainy Season" means from October 1 of any given calendar year

4  and ending April 30 of the following calendar year.

5  l.  "MIP" means a Monitoring Implementation Plan.

6  m.  "PPT" means Pollution Prevention Team.

7  n.  "Qualified Industrial Storm Water Practitioner" or "QISP" shall

8  have the definition set forth in Section IX.A of the General Permit.

9  o.  "Qualifying Storm Event" or "QSE" shall have the definition set

10  forth in Section XI.B of the General Permit.

11  p.  "Reporting Year" means the period from July 1 of a given

12  calendar year to June 30 of the following calendar year.

13  q.  "SMARTS" means the California State Water Resources Control

14  Board's Stormwater Multiple Application and Report Tracking

15  System.

16  r.  "SWPPP" means a Storm Water Pollution Prevention Plan.

17  s.  "Term" means the period between the Effective Date and the

18  "Termination Date."

19  t.  "Termination Date" means the latest of:

20  i.  June 30 following three (3) years from the Effective Date;

21  or

22  ii.  Seven (7) calendar days from the conclusion of any

23  proceeding or process to enforce the Consent Decree

24  initiated prior to June 30 following three (3) years after the

25  Effective Date; or

26

27

28

6

16157-00002/5432245.10

iii.     Seven (7) days from Defendant's completion of all payments and other affirmative duties required by this Consent Decree.

**C.     EARLY TERMINATION**

i.     Notwithstanding the foregoing, if the sampling results for samples taken at the Facility as required by this Consent Decree demonstrate no exceedances of any Table 1 parameter at any discharge point for two (2) consecutive reporting years, and provided that all accrued monetary obligations in this Consent Decree have been satisfied and that there are no ongoing, unresolved proceedings or processes to enforce the Consent Decree, then the Termination Date of this Consent Decree shall be thirty (30) days from the date Crest provides written notification to Coastkeeper of its right to terminate pursuant to this Paragraph.

ii.     Alternatively, the Consent Decree will terminate ten (10) business days after Defendant notifies OC Coastkeeper that it has received written approval/acceptance notification from the Santa Ana Regional Board via SMARTS or otherwise for "No Exposure Certification" ("NEC") coverage at the Facility following an inspection that confirms compliance with all NEC requirements of the General Permit.

16157-00002/5432245.10

III.    **COMMITMENTS OF THE SETTLING PARTIES**

    A.    **STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES**

    12.    <u>Non-Storm Water Discharge Prohibition</u>: Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

    13.    <u>Current and Additional Best Management Practices</u>: At all times during the Term, Defendant shall implement BMPs identified in its then-effective SWPPP and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those necessary to comply with BAT/BCT. In addition, the General Permit Receiving Water Limitations require that discharges from the Facility "not cause or contribute to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan." Crest shall develop and implement BMPs necessary to comply with the General Permit requirement to achieve compliance with BAT/BCT standards, to comply with the applicable water quality standards, and to prevent or reduce contamination in storm water discharges from the Facility in compliance with this Consent Decree.

    14.    <u>Structural and Non-Structural BMPs for the Facility</u>: Within forty-five (45) days of the Effective Date, Crest shall develop and implement the following BMPs at the Facility:

        a.    Remove and prevent the long-term storage of inutile or abandoned racks, vehicles, equipment, paint, and waste scrap materials from outdoor uncovered areas to the maximum extent feasible and practicable, which may require additional roofing or other outdoor coverage of storage areas and shipping and receiving areas;

8

b.  Implement a sweeping program on all paved areas at least once per month outside of the Rainy Season and weekly during the Rainy Season, and within twenty-four (24) hours prior to a Forecasted Rain Event, subject to equipment maintenance, equipment functionality, and weather considerations. To the extent that the twenty-four (24) hour deadline occurs during a weekend or federal holiday, the Facility shall perform said sweeping on the next non-holiday non-weekend operating day. The sweeping program shall include machine sweeping in all areas accessible by said machine. Hand sweeping or other devices (including shop vacuums) shall be used in areas inaccessible by said machine due to the machine's space constraints on an as-needed basis;

c.  Prior to the start of a Forecasted Rain Event, cover all scrap bins and trash cans with lids to the maximum extent feasible, and cover other industrial materials with coverings sufficient to prevent exposure to rainfall, including without limitation those stored outside and where roof protection is inadequate, or otherwise move them into a covered structure adequate to minimize exposure to rainfall;

d.  During the Rainy Season and prior to a forecasted rain event, employ and secure wattles/filters/filtration socks (biochar or other equivalent media) with a diverse composition to target the full range of pollutants identified in Table 1 of this Consent Decree to achieve the limits described in Table 1 and configure such wattles/filters/socks to achieve maximum contact time with storm water prior to discharge (e.g. in multiple layers or overlapping formations) upstream of the Discharge Point(s) identified in the

9

16157-00002/5432245.10

then-effective SWPPP. Such wattles/filters/filtration socks shall be deployed prior to a Forecasted Rain Event;

e.  Replace the wattles/filters/filtration socks during the Rainy Season: (1) at least as frequently as the manufacturer's recommendation; (2) when degraded or ineffective, including without limitation when there are material rips, tears or other visually observable damage that render them ineffective, and/or sampling data demonstrating the wattles/filters/socks are not sufficiently reducing pollutant concentrations;

f.  Institute and incorporate into the Facility's SWPPP a formal pre-rain protocol to be implemented within twenty-four (24) hours prior to a Forecasted Rain Event, involving inspection of any wattles/filters/socks deployed at the Facility, removal of any exposed waste material, site-wide sweeping of paved areas, and cover of uncovered debris bins in trash cans To the extent that the twenty-four (24) hour deadline occurs during a weekend or federal holiday, the Facility shall perform said protocol on the next non-holiday non-weekend operating day;

g.  Install and maintain an electronic rain gauge or sensor at the Facility. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Crest Coating shall collect data using the gauge/sensor for all QSEs to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree, except in the event of equipment malfunctions caused by

[PROPOSED] CONSENT DECREE                                    Case No.: 8:24-CV-02619

16157-00002/5432245.10

something outside of Crest Coating's control. Coastkeeper can
request this data from Crest in accordance with Paragraph 27; and

h.    To the extent feasible and practicable, during wet weather, cease
all exposed industrial activities likely to result in a Table 1
exceedance from occurring outdoors without being covered
sufficiently to prevent exposure to storm water.

15.    <u>Visual Observations of Roof Runoff</u>: During the 2025-2026 Reporting
Year, Crest shall make observations of roof runoff from all downspouts that can
potentially drain onto the industrial area of the Facility to determine if roof runoff
flows into the stormwater collection and conveyance system on the paved area of
industrial activity. Crest shall document visual observations with photographs or
videos during at least two QSEs, and report findings to Coastkeeper by July 1, 2026.
If roof runoff does flow into stormwater collection, Crest shall:

a.    Employ one of the following options to minimize or prevent roof
runoff from flowing into stormwater collection: (i) use a
combination of splash blocks and downspout extensions to direct
downspout stormwater from downspouts to a larger landscaped
area; (ii) update landscape areas to allow for increased permeation
of water and/or add downspout planters; (iii) replace the present
landscape media with an engineered soil mix offering greater
hydraulic conductivity and infiltration; or (iv) confer with
Coastkeeper regarding other reasonable proposals.

16.    <u>Reporting</u>: Withing thirty (30) days of completion of all the BMPs
identified in Paragraph 14 and within thirty (30) days of completion of the BMPs
identified in Paragraph 15 if such BMPs are deemed applicable, Crest Coating will
provide Coastkeeper with written confirmation of completion, including sufficient
photographs of structural BMPs.

16157-00002/5432245.10

**B.**    **SAMPLING AT THE FACILITY**

17.    Crest shall develop a monitoring program consistent with the General Permit. During the Term, Crest shall collect samples of storm water discharge from each Discharge Point(s) during no fewer than four (4) Qualifying Storm Events during the Reporting Year, which may be split up by two (2) QSEs during the first half of the Reporting Year and two (2) QSEs during the second half of the Reporting Year. Such sampling shall take place as soon as practicable within the four (4) hour period required by the General Permit § XI.B.5. Any failure to collect samples as required by this Consent Decree, including without limitation as a result of insufficient discharge, shall be documented, including by taking photographs of the Discharge Point, and submitted to Coastkeeper by email, for the date when the sample should have been collected but was not, within ten (10) days of a written request for such records by Coastkeeper.

18.    <u>Sampling Parameters</u>: All samples collected pursuant to this Consent Decree shall be analyzed, at a minimum, for the parameters listed in Table 1. Should Crest conduct sampling for and detect any additional parameters that are listed in <u>40 C.F.R. § 131.38</u> and/or in the General Permit as a result of changed operations, a revised pollutant source assessment,  such parameter shall be treated as if listed in Table 1 for the purposes of this Consent Decree, including the action plan requirements below, and the Parties shall meet and confer at Coastkeeper's request regarding the applicable Table 1 limit for such purposes.  If sample analyses from four (4) consecutive QSEs yield non-detect levels of additional pollutants added as a condition of this Agreement listed in Table 1 from the Discharge Point, then Defendant may discontinue testing for that/those parameters without violating this Consent Decree.

19.    <u>Laboratory and Holding Time</u>: Except for pH samples, Crest or Crest's consultant or agent shall cause delivery of all samples to a California state certified

environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a calibrated portable instrument for pH in accordance with the manufacturer's instructions. During the Term, Crest shall exclusively use a calibrated portable instrument for measuring pH in accordance with the manufacturer's instructions and shall not use wide range litmus pH paper or other equivalent.

20.    Detection Limit: Crest shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the General Permit and Table 1 below.

21.    Reporting: Crest shall provide complete laboratory results of all samples collected at the Facility designated discharge monitoring locations to SMARTS in accordance with the General Permit, and Crest shall either: a) provide the report(s) to Coastkeeper; or b) email Coastkeeper with notification of said upload to SMARTs.

**C.    REDUCTION OF POLLUTANTS IN DISCHARGES**

22.    Table 1 Numeric Limits: Crest shall develop and implement BMPs to reduce pollutants in storm water discharges from the Facility to levels below those in Table 1.

[PROPOSED] CONSENT DECREE                                      Case No.: 8:24-CV-02619

16157-00002/5432245.10

**TABLE 1**

| Analytes | Values | Source of Limit |
|---|---|---|
| pH | 6 - 9 | Basin Plan |
| Zinc (Zn) | 0.26 mg/L | Annual NAL (Table 2 of Permit) |
| Total Suspended Solids (TSS) | 100 mg/L | Annual NAL (Table 2 of Permit) |
| Aluminum (Al) | 0.75 mg/L | Annual NAL (Table 2 of Permit) |
| Nitrate + Nitrite-Nitrogen (N+N) | 0.68 mg/L | Annual NAL (Table 2 of Permit) |
| Copper (Cu) | 0.0332 mg/L | Annual NAL (Table 2 of Permit) |
| Oil and Grease (O&G) | 15 mg/L | Annual NAL (Table 2 of Permit) |
| Lead (Pb) | 0.262 | Annual NAL (Table 2 of Permit) |

23.   _Action Plan Trigger:_ The action plan requirements set forth in Paragraph 24 shall be triggered upon the occurrences of any of the following events occurring during the Term: (1) two exceedances of the Table 1 values for the same pollutant from any drainage area during a Reporting Year during the Term; (2) three exceedances of any combination of pollutants from any outfall during a Reporting Year; or (3) a Level 1 or Level 2 ERA has been triggered when sampling results during the Term indicate a NAL exceedance for a pollutant. _See_ Permit Section XII.C and D. Any Action Plan required as a result of a No. 3 trigger would be fulfilled by the Permit-required Level 1 or Level 2 ERA, which would not require a duplicate Action Plan but would require the Facility to submit their Level 1 or Level 2 ERA to Coastkeeper as their Action Plan.

24.   _Action Plan Requirement:_ As of the Effective Date, and for the remainder of the Term, if Crest triggers an Action Plan as described in Paragraph 23, Crest shall prepare and submit to Coastkeeper a plan for reducing and/or eliminating

the relevant discharge of pollutants for the Facility ("Action Plan"). The complete

Action Plan shall be submitted to Coastkeeper by July 31 of each year of the Term or

within sixty (60) days of the triggering event, whichever is later. An Action Plan shall

not be required when the BMPs for the applicable Exceedance for the same pollutant

in the same drainage area were addressed in a previous Action Plan in the same

Reporting Year and such BMPs were not yet implemented as of the date of the

applicable QSE sampling that led to the Exceedance.  To the extent Defendant

believes that any Exceedance is the result of pollutants originating from non-

industrial sources such as aerial deposition or from an adjacent facility, the Action

Plan shall include data and technical analysis to reasonably establish such facts.

        a.    <u>Action Plan Requirements</u>. Each complete Action Plan submitted
shall include at a minimum: (1) the identification of the
pollutant(s) discharged in excess of the numeric limit(s); (2) an
assessment of the source of each pollutant exceedance; (3) the
identification of additional BMPs, which shall include
Containment or Treatment BMPs defined in Paragraph 11(d), that
shall be implemented to achieve compliance with the numeric
limit(s) defined in Table 1, as well as the design plans and
calculations of these additional BMPs; and (4) time schedules for
implementation of the proposed BMPs. The time schedule(s) for
implementation shall ensure that all BMPs are implemented as
soon as possible, but in no event later than ninety (90) days
following the submission of the Action Plan, unless a later
implementation date is mutually agreed upon by the Settling
Parties. Within fourteen (14) days of all of the BMPs set forth in
the Action Plan being implemented, Crest shall confirm to

16157-00002/5432245.10

Coastkeeper in writing, with photographs when applicable, that such BMP has been implemented as set forth in the Action Plan.

b.    Action Plan Proposed BMPs: If appropriate, Containment or Treatment BMPs, as defined in Paragraph 11(d), shall be included in any Action Plan to attain the Table 1 levels in the Facility's storm water discharges.

c.    Action Plan Review: Coastkeeper shall have thirty (30) days upon receipt of Crest's complete Action Plan to provide Crest with comments. Within fourteen (14) days of receiving Coastkeeper's proposed revisions to an Action Plan, Crest shall consider each of Coastkeeper's recommended revisions and accept them or justify in writing why any proposed revision or recommendation is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d.    Crest shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 24(a)-(b).

e.    Action Plan Payments: Crest shall pay Eight Thousand Dollars ($8,000) each time an Action Plan is submitted to Coastkeeper at the same time that the Action Plan is submitted. Payments shall be made to "Orange County Coastkeeper" via certified mail, return receipt requested to Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626. Failure to submit a

16157-00002/5432245.10

payment as required under this Paragraph will constitute a breach of the Consent Decree.

### D. VISUAL OBSERVATIONS

25. <u>Storm Water Discharge Observations</u>: During the Term, appropriately trained staff of Defendant shall conduct visual observations during the Facility's operating hours for each QSE until the required number of QSEs is sampled for each half of the reporting year. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit, and any successor thereof.

26. <u>Monthly Visual Observations</u>: During the Term, appropriately trained staff of Crest shall conduct monthly non-storm water visual observations of the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit, and any successor thereof. Such observations shall include Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. The Discharge Point shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility. Such inspections shall further include observations of all storm water BMPs that are used at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facility. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility.

### E. MAINTAINING RECORDS AND RECORD REQUESTS

27. During the Term, Crest shall maintain records, which may include photographs, to document compliance with all terms of this Consent Decree, including, but not limited to Paragraphs 14, 24, 25, 26, and 28. Coastkeeper can request a copy of these records in writing, and Crest shall provide Coastkeeper with a copy of such

16157-00002/5432245.10

1  requested records within fourteen (14) days of receipt of a written request

2  from Coastkeeper for those records.

3     **F.    EMPLOYEE TRAINING**

4        28.    Within forty-five (45) days of the Effective Date, Crest shall develop

5  and implement an employee training program that meets the following requirements

6  and ensures (1) that there is a sufficient number of employees at the Facility

7  designated to achieve compliance with the General Permit and this Consent Decree

8  ("Designated Employees"), and (2) that these Designated Employees are properly

9  trained to perform the activities required by the General Permit and this Consent

10  Decree ("Training Program"):

11        a.    Training Materials: Training materials should include, at

12            minimum, protocols, including maps and drawings where

13            appropriate, for reference and use by Crest's personnel to ensure

14            effective implementation of all BMPs at the Facility;

15        b.    Language: The training and training materials shall be available

16            and offered in the language(s) in which relevant employees are

17            fluent. If necessary, Crest shall provide a translator or translators

18            at all trainings where such translation is likely to improve staff

19            comprehension of the Training Program and improve compliance

20            with this Consent Decree and the General Permit;

21        c.    Training Implementation: Annual training shall be provided by a

22            QISP familiar with the requirements of this Consent Decree and

23            the General Permit, and shall be repeated as necessary to ensure

24            that all relevant employees are familiar with the requirements of

25            this Consent Decree, the Permit, and the Facility's SWPPP. All

26            relevant new staff shall receive this training before assuming

27            responsibilities for implementing the SWPPP;

28

[PROPOSED] CONSENT DECREE                    Case No.: 8:24-CV-02619

16157-00002/5432245.10

d.    <u>Sampling Training</u>: Crest shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

e.    <u>Visual Observation Training</u>: Crest shall provide training on how and when to properly conduct visual observations to Designated Employees;

f.    <u>Non-Storm Water Discharge Training</u>: Crest shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

g.    <u>Training for Designated Employees</u>: All Designated Employees at the Facility shall participate in the Training Program annually or more frequently as needed to comply with this Consent Decree and/or the General Permit. New Designated Employees shall participate in the Training Program within ninety (90) days of their hiring date; and

h.    <u>General Training for ALL Employees</u>: ALL Employees who have not received training as of the Effective Date shall receive initial training to ensure they receive enough information regarding storm water housekeeping and best practices to comply with this Consent Decree and the Storm Water Permit. Any past training for all Employees does not need to be documented. Any training occurring after the Effective Date of ALL Employees must be documented.

[PROPOSED] CONSENT DECREE                                           Case No.: 8:24-CV-02619

16157-00002/5432245.10

### G.    STORM WATER POLLUTION PREVENTION PLAN

29.    SWPPP Revisions:

    a.    Initial SWPPP Revisions: To the extent not already incorporated, Crest shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to Coastkeeper within forty-five (45) days of the Effective Date for Coastkeeper's review and comment pursuant to Paragraph 29(c) below.  The complete, updated SWPPP shall contain, at a minimum, the following elements:

        i.    A revised pollutant source assessment, including all elements required by Section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

        ii.    A detailed narrative description of each industrial activity with the potential to impact storm water quality occurring at the Facility; each material handling and storage area; how all unauthorized non-storm water discharges have been eliminated; as well as the source, frequency, quantity, and characteristics of all of all non-storm water discharges at the Facility as required by Section X.G of the General Permit;

        iii.    Descriptions of all BMPs in accordance with Section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree. Such description shall include identification and justification of each minimum

20

BMP or applicable BMP not being implemented at the Facility;

iv.    A set of site maps that comply with Section X.E of the General Permit and provisions of this Consent Decree; and

v.    A MIP as required by Sections XI and X.I of the General Permit.

b.    <u>Additional SWPPP Revisions</u>:

i.    Within thirty (30) days after approval of any Action Plan by Coastkeeper (or resolution pursuant to Dispute Resolution), Crest shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to Coastkeeper for review and comment pursuant to Paragraph 29(c) below.

ii.    Within thirty (30) days after any changes in industrial activities or sources of industrial pollutants, changes to Discharge Point(s), or other Facility changes requiring a SWPPP revision (including but not limited to, changes in Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Crest shall revise the then-current SWPPP to reflect such changes and submit the complete, updated SWPPP to Coastkeeper review and comment pursuant to Paragraph 29(c) below.

c.    <u>Review of SWPPP</u>:  For any SWPPP updates pursuant to Paragraph 29(b) above, Coastkeeper shall have thirty (30) days upon receipt of Crest's complete SWPPP to provide Crest with comments. Within thirty (30) days of receiving Coastkeeper's

16157-00002/5432245.10

comments and proposed changes to the SWPPP, Crest shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Crest shall upload the SWPPP to SMARTS.

**H.    COMPLIANCE MONITORING AND REPORTING**

30.    Every Reporting Year during the Term, Coastkeeper may conduct up to one (1) site inspection ("Site Inspection") for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Crest's compliance with this Consent Decree and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding two additional Site Inspections at Coastkeeper's request. Coastkeeper shall not unreasonably request, and Crest shall not unreasonably deny, the additional Site Inspections. Any Site Inspection shall occur during normal business hours, and Coastkeeper will provide Crest with at least forty-eight (48) hours' notice prior to a Site Inspection for dry weather inspections. For any Site Inspection requested to occur in wet weather, Coastkeeper will provide at least twenty-four (24) hours' notice and shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 58. During the wet weather inspection, Coastkeeper may request that Crest collect a sample of industrial storm water discharge from the Facility's designated industrial Discharge

22

Point(s), to the extent that such discharges are occurring. Crest shall collect the sample and provide a split sample to Coastkeeper. Coastkeeper's representative(s) may observe the split sample(s) being collected by Crest's representative. Coastkeeper shall be permitted to take photographs or video recordings of industrial, outdoor areas during any Site Inspection.

31.    Document Provision. During the Term, Crest shall notify and submit documents to Coastkeeper as follows:

a.    Crest shall copy on or send to Coastkeeper all material compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality (except automated or non-substantive replies and confirmations); and

b.    Within seven (7) business days of receipt by Crest, Crest shall send to Coastkeeper any material compliance document, inspection report, written communication and/or correspondence (except automated or non-substantive replies and confirmations), or any document related to storm water quality at the Facility received by Crest from the Regional Board, the State Board, and/or any state or local agency, county, municipality. Crest shall mail paper copies or email electronic copies of documents to Coastkeeper at the relevant notice address contained below.

32.    Compliance Monitoring. Crest agrees to partially defray costs associated with Coastkeeper's monitoring of Crest's compliance with this Consent Decree Thirty-Five Thousand Dollars ($35,000) until the Termination Date.  In the event that that this Consent Decree extends beyond the Termination Date, Crest shall reimburse

23

16157-00002/5432245.10

Coastkeeper an additional Four Thousand Dollars ($4,000) per year that the Consent Decree remains in effect. Payment shall be made within thirty (30) days of the Entry Date, and on the anniversary of the Entry Date should the term extend beyond three (3) years, as applicable. The payment shall be made via check, made payable to: "Orange County Coastkeeper" via certified mail, return receipt requested to Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

## I. ENVIRONMENTAL MITIGATION, LITIGATION FEES AND COSTS, STIPULATED PENALTIES, AND INTEREST

33. <u>Environmental Mitigation Project</u>: To fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in and around Huntington Harbour and Anaheim Bay, Crest agrees to make a payment totaling Thirty Five Thousand Dollars ($35,000.00) to Wetlands and Wildlife Care Center made within thirty (30) days of the Entry Date, payable to Wetlands and Wildlife Care Center and sent via overnight mail to 21900 Pacific Coast Highway, Huntington Beach, CA 92646.  Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

34. <u>Coastkeeper's Fees and Costs</u>: Crest agrees to pay a total of Ninety Thousand Dollars ($90,000.00) to Coastkeeper to partially reimburse Coastkeeper for their investigation fees and costs, expert/consultant fees and costs, attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Entry Date. The payment shall be made payable to Orange County Coastkeeper and delivered by certified mail or overnight carrier to: Orange County Coastkeeper, 3151 Airway Ave., Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer. Failure to submit

16157-00002/5432245.10

1    payment as required under this Paragraph will constitute breach of the

2    Consent Decree.

3        35.    Stipulated Payment. In the event that Crest fails to submit to

4    Coastkeeper any payment, document, report, or communication required by this

5    Consent Decree, Coastkeeper shall provide written notice to Defendant of such

6    missed deadline. Defendant shall have five (5) business days from receipt of such

7    notice to respond to Coastkeeper, and if necessary, cure such delinquency. If

8    Defendant fails to respond and, if necessary, cure such alleged delinquency within

9    five (5) business days of receipt of Coastkeeper's notice, then Crest shall pay a

10   stipulated payment of One Hundred Dollars ($100) per day. Such stipulated payments

11   shall be made by check payable to: Wetlands and Wildlife Care Center, and such

12   funds shall be used for the sole purpose of funding environmentally beneficial

13   projects, as described in Paragraph 33. Payment shall be sent via overnight mail to

14   Wetlands and Wildlife Care Center, 21900 Pacific Coast Highway, Huntington

15   Beach, CA 92646. Crest agrees to make the stipulated payment within fourteen (14)

16   days after the resolution of the event that precipitated the stipulated payment liability.

17       36.    Interest on Late Payments: Crest shall pay interest on any payments,

18   fees, or costs owed pursuant to this Consent Decree that are not received by the due

19   date. The interest shall accrue starting the next business day after the payment is due

20   and shall be computed at a rate equal to the lower of: (i) 5% per year (0.417% per

21   month); or (ii) the maximum rate permitted by applicable law. Interest shall continue

22   to accrue daily on any outstanding balance until Crest is current on all payments then

23   due under this Consent Decree, and shall be paid at the same time that the payments,

24   fees, or costs owed are paid to Coastkeeper. Interest on late payments shall be paid by

25   check payable to: Wetlands and Wildlife Care Center, and such funds shall be used

26   for the sole purpose of funding environmentally beneficial projects, as described in

27

28

[PROPOSED] CONSENT DECREE                                    Case No.: 8:24-CV-02619

16157-00002/5432245.10

Paragraph 33. Payment shall be sent via overnight mail to: Wetlands and Wildlife Care Center, 21900 Pacific Coast Highway, Huntington Beach, CA 92646.

## IV.    DISPUTE RESOLUTION

37.    <u>Court to Retain Jurisdiction</u>. This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

38.    <u>Meet and Confer</u>. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (telephonically, by video conference, or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the notice.

39.    <u>Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in Paragraph 38 above, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion. If the parties do not wish to request a conference with a magistrate, they may request a settlement conference.

40.    In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, <u>33 U.S.C. § 1365(d)</u>, and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.      MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

41.     <u>Coastkeeper's Waiver and Release of Crest</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Coastkeeper, on its own behalf and on behalf of its officers and directors, release Crest, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

42.     <u>Crest's Waiver and Release of Coastkeeper</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Crest, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Coastkeeper, its officers and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

43.     Nothing in this Consent Decree limits or otherwise affects Coastkeeper's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Crest's compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.      MISCELLANEOUS PROVISIONS

44.     <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation.

27

1   Crest maintains and reserves all defenses it may have to any alleged violations that
2   may be raised in the future.

3        45.    Counterparts. This Consent Decree may be executed in any number of
4   counterparts, all of which together shall constitute one original document.  Telecopy
5   and/or facsimile copies of original signature shall be deemed to be originally
6   executed counterparts of this Consent Decree.

7        46.    Authority. The undersigned representatives for Coastkeeper and Crest
8   each certify that s/he is fully authorized by the party whom s/he represents to enter
9   into this Consent Decree. A Party's signature to this Consent Decree transmitted by
10  facsimile or electronic mail shall be deemed binding.

11       47.    Construction. The language in all parts of this Consent Decree shall be
12  construed according to its plain and ordinary meaning, except as to those terms
13  defined in the Permit, the Clean Water Act, or specifically herein. The captions and
14  paragraph headings used in this Consent Decree are for reference only and shall not
15  affect the construction of this Consent Decree.

16       48.    Full Settlement. This Consent Decree constitutes a full and final
17  settlement of this matter.

18       49.    Integration Clause. This is an integrated Consent Decree. This Consent
19  Decree is intended to be a full and complete statement of the terms of the agreement
20  between the Parties and expressly supersedes any and all prior oral or written
21  agreements, covenants, representations, and warranties (express or implied)
22  concerning the subject matter of this Consent Decree.

23       50.    Severability. In the event that any provision, paragraph, section, or
24  sentence of this Consent Decree is held by a court to be unenforceable, the validity of
25  the enforceable provisions shall not be adversely affected.

26       51.    Choice of Law. The laws of the United States shall govern this Consent
27  Decree.

28

[PROPOSED] CONSENT DECREE                                    Case No.: 8:24-CV-02619

16157-00002/5432245.10

52.    <u>Diligence</u>: Crest shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

53.    <u>Effect of Consent Decree</u>: Compliance with this Consent Decree does not mean that Crest is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

54.    <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

55.    <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. To the maximum extent feasible, any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

56.    <u>Assignment</u>. Subject only to the express conditions contained in this Consent Decree, all the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Settling Parties, and their successors and assigns. Either Party shall notify the other Party within thirty (30) days of any assignment.

57.    <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, weather event making

29

16157-00002/5432245.10

performance impossible (e.g., flood, windstorm), pandemic, public health crisis, or

natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism;

restraint by court order or public authority or agency; or action, non-action or delay

by, or temporary or permanent inability or delays to obtain the necessary

authorizations or approvals from any governmental agency. A Force Majeure event

shall not include normal inclement weather for Anaheim, CA, economic hardship,

inability to pay, or employee negligence. Any party seeking to rely upon this

Paragraph to excuse or postpone performance shall have the burden of establishing

that it could not reasonably have been expected to avoid the Force Majeure event and

which by exercise of due diligence has been unable to overcome the failure of

performance. The Parties shall exercise due diligence to resolve and remove any Force

Majeure event.

58.    <u>Correspondence</u>. All notices required herein or any other correspondence

pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail

transmission to the email address listed below, or if electronic mail is not feasible,

then by certified U.S. mail with return receipt, or by hand delivery to the following

addresses:

[PROPOSED] CONSENT DECREE                                      Case No.: 8:24-CV-02619

16157-00002/5432245.10

| If to Coastkeeper: | If to Crest: |
|---|---|
| Sarah J. Spinuzzi | Jeff Erickson |
| Email: sarah@coastkeeper.org | Email: Jeff@crestcoating.com |
| ORANGE COUNTY | CREST COATING INC. |
| COASTKEEPER | 1361 S. Allec Street |
| 3151 Airway Avenue, Suite F-110 | Anaheim, CA 92805 |
| Costa Mesa, CA 92626 | Phone: 714 635-7090 |
| Phone: (714) 850-1965 | |
| | |
| With copies to: | With copies to: |
| Douglas Chermak | Sherry Jackman |
| Email: doug@lozeaudrury.com | Email: |
| LOZEAU DRURY | sjackman@greenbergglusker.com |
| 1939 Harrison Street, Suite 150 | GREENBERG GLUSKER LLP |
| Oakland, CA 94612 | 2049 Century Park East, Suite 2600 |
| Phone: (510) 836-4200 | Los Angeles, CA 90067 |
| | Phone: (310) 553-3610 |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

59.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

[PROPOSED] CONSENT DECREE                                    Case No.: 8:24-CV-02619

16157-00002/5432245.10

1       The Parties hereto enter into this Consent Decree and submit it to the Court for

2  its approval and entry as a final judgment.

3
        IN WITNESS WHEREOF, the undersigned have executed this Consent Decree
4
   as of the date first set forth below.
5

6

7  APPROVED AS TO CONTENT

8

9
   Dated:  May 7/2025                         By:  Garry Brown
10                                                 Garry Brown
11                                                 Executive Director
                                                   Orange County Coastkeeper
12

13
        5/6/2025 | 9:45 PM PDT                      DocuSigned by
14                                                  Jeff Erickson
   Dated: _____                      By: _____
15                                                 Jeff Erickson
                                                   President
16                                                 Crest Coating, Inc.

17

18 APPROVED AS TO FORM                         LOZEAU DRURY

19

20
21 Dated:  5/7/25                             By: _____
                                                  Douglas Chermak
22                                                Attorney for Orange County
23                                                Coastkeeper

24
                                                   DocuSigned by
25      5/2/2025 | 10:11 AM PDT                     Sherry Jackman
   Dated: _____                      By: _____
26                                                 Sherry E. Jackman
                                                   Greenberg Glusker LLP
27                                                 Attorney for Crest Coating, Inc.

28
                                          32
   [PROPOSED] CONSENT DECREE                             Case No.: 8:24-CV-02619

   16157-00002/5432245.10

1  **IT IS SO ORDERED.**
2  **FINAL JUDGMENT**

3

Upon approval and entry of this Consent Decree by the Court, this Consent
4  Decree shall constitute a final judgment between the Coastkeeper and Crest.

5

6

7  Dated: June 23, 2025 _____

_Karen E. Scott_ _____

8                                     Honorable Karen E. Scott
9                                     United States Magistrate Judge
                                      Central District of California

10

---

33